In re **LYONS TRANSPORTATION LINES, INC., f/d/b/a CTS Acquisition, Inc., f/d/b/a Lyons Group Inc., f/d/b/a Express Transport, Inc., f/d/b/a Transportation Brokers, Inc., Debtors.**

**SABLE, MAKOROFF & GUSKY, P.C., Movant,**

v.

**Vedder J. WHITE, Trustee for Lyons Transportation Lines, et al., Respondents.**

**Bankruptcy No. 90–00768E. Motion No. FSG–1.**

United States Bankruptcy Court, W.D. Pennsylvania.

Jan. 11, 1994.

---

F. Scott Gray, Pittsburgh, PA, for Official Committee of Unsecured Creditors and Sable, Makoroff & Gusky, P.C.

Frank C. Fogl III, Erie, PA, for trustee.

Diana Thimmig and Edward R. Brown, Cleveland, OH, for Sherwin–Williams Co.

## OPINION

WARREN W. BENTZ, Chief Judge.

### Factual Background

On October 19, 1990, Lyons Transportation Lines, Inc. et al. ("Lyons") filed its voluntary Petition under Chapter 11 of the Bankruptcy Code. On November 1, 1990, Sable, Makoroff & Gusky, P.C. ("SMG") filed an Application to be appointed as counsel to the Official Committee of Unsecured Creditors ("Committee"). An order approving the SMG's appointment effective as of October 22, 1990 was entered March 18, 1991.

Lyons operated under Chapter 11 until January 24, 1991, when upon the Court's own motion, after hearing, the case was converted to a proceeding under Chapter 7. *In re Lyons Transportation Lines, Inc.*, 123 B.R. 526 (Bankr.W.D.Pa.1991). The Committee opposed the conversion. Because the Committee had on it a number of people familiar with the trucking industry, the Committee felt that it could best supervise the liquidation of Lyons' assets and Lyons' potential causes of action against the Sherwin–Williams Company ("SWC") and numerous other entities. The Court, while recognizing that the Committee could provide valuable input into the administration of the estate, concluded that it would be less expensive to administer the liquidation in a Chapter 7.

Upon consideration of the considerable expertise that the individual Committee members had with the trucking industry, the Court determined it appropriate to continue the existence of the Chapter 11 Committee and its legal counsel after the conversion to Chapter 7. Counsel was necessary as it was important for the Committee to be able to communicate their views to the parties involved, including the Chapter 7 Trustee ("Trustee"), the Trustee's counsel, and the Court. An Order was entered on January 24, 1991 which provides in pertinent part:

> It is FURTHER ORDERED that until further Order of this Court, the Official Committee of Unsecured Creditors shall remain intact and the trustee may utilize the services of the Committee's counsel and the debtor's counsel to the extent desired by the trustee.

In reliance upon this Court's Order, the Trustee requested and SMG continued to provide services in the Chapter 7 case. As counsel for the Trustee stated at a hearing held on August 10, 1992:

> It is true that the trustee has asked and has worked with the Creditors' Committee from time to time throughout this proceeding. I suspect that, as a matter of reliance, we did consult with them and ask for their participation. They were relying perhaps on the Order that the Court had made, as we were, that we could rely on them and rely on the attorney for the debtor. I think where the trustee did request that they have some input into the case, that they should be compensated.

Further, SMG was directed by the Court to present the Committee's view on crucial matters in the case. SWC was aware of the Committee and its counsel's involvement in the Chapter 7 case. One of the major pieces of litigation in this case involved the estate's claims against SWC. SWC and the Trustee eventually arrived at a proposed settlement which was presented to the Court for approval. The Committee and its counsel, SMG, were required by the Court to participate. Examples of the Court's instructions to the

Committee are evidenced by various orders in the SWC matters. For example:

Order of April 8, 1992, in part:

Counsel for the Trustee, Creditors' Committee, Tendler and Costello, are directed to confer jointly by telephone as to their respective positions not later than April 29, 1992.

Order of May 6, 1992, in part:

The Creditors' Committee is directed to file with the Court and serve on other counsel, on or before May 21, 1992, a definitive statement of its position, either in favor of or opposed to the Trustee's proposed settlement with the Sherwin–Williams Company.

The Committee raised objections to the proposed settlement. In July, 1992, while the settlement was pending, SWC filed a motion to delete and otherwise void the paragraph of the January 24, 1991 Order which allowed the continued existence of the Chapter 11 Committee and the services of SMG. A hearing on the SWC motion was held on August 10, 1992. It was clear that the reason SWC wanted the Committee and its counsel terminated was that the Committee was not satisfied with the proposed settlement between SWC and the Trustee and that SWC sought to eliminate the opposition. SWC's motion to terminate the Committee and its counsel was refused.

SMG requested compensation and reimbursement of its expenses for the Chapter 11 period from October 24, 1990 through January 24, 1991 in the amounts of $39,900 and $2,550.13, respectively. This Court often holds back a portion of the interim compensation requested until the end of the case. Therefore, by Order dated May 21, 1991, SMG was allowed interim compensation of $30,000 and reimbursement of the full amount of its expenses.

Presently before the Court is SMG's second interim Application (the "Application") for fees in the amount of $22,974.25 and expenses in the amount of $3,429.44 for the period from January 25, 1991 through March 31, 1992.[1]

A hearing to consider the Application was held on June 15, 1992. The sole appearance at that hearing was by counsel for the Trustee who advised the Court that the "trustee has no objections to the fees requested."

SWC did not receive notice of the June 15, 1992 hearing. When SWC learned of the pending Application, it promptly filed a Memorandum in opposition. SWC asserts that there is no statutory authority for a Chapter 7 committee to engage counsel or any statutory basis to compensate such counsel from estate funds; that "[a]t most, Committee counsel should be compensated under the January 24, 1991 Order for services rendered at the express request of the trustee;" that the January 24, 1991 Order does not specify that SMG will be compensated from the assets of the estate; and 11 U.S.C. § 105 does not provide a basis for such compensation.

SMG asserts that no authority prohibits this Court from keeping a Chapter 11 Committee intact after conversion and that the Court can permit the continued employment of Committee counsel where the Court deems it necessary or appropriate and that SWC has failed to raise these objections within a reasonable time after entry of the:

1. January 24, 1991 Order which retained the Chapter 11 Committee intact;

2. March 18, 1991 Order approving engagement of SMG as counsel for the Committee; and

3. May 21, 1991 Order granting "interim" compensation to SMG as counsel for the Committee.

### Discussion

#### I. Compensation from the Estate

■ Normally, counsel for a Creditors' Committee ceases all work after the conversion of a Chapter 11 case to a case under Chapter 7 as the conversion results in the dissolution of the Creditors' Committee along

---

1. On April 7, 1993, SMG filed Motion No. FSG–2 which is its third request for interim fees in the amount of $37,558.98 and expenses in the amount of $5,206.08. The Court has yet to act on Motion No. FSG–2.

with the right of Committee's counsel to compensation for post-conversion services. *In re Freedlander, Inc. The Mortgage People*, 103 B.R. 752 (Bankr.E.D.Va.1989); *In re Energy Cooperative, Inc.*, 95 B.R. 961 (Bankr.N.D.Ill. 1988). Upon conversion, the Creditors' Committee attorney typically bears no further responsibility for the course of the case. It is the Chapter 7 trustee and the professionals he employs who are charged with the administration of the estate.

In the present case, due to the complicated issues facing the Trustee and the Court's perceived expertise among the members of the Committee, we directed that the Chapter 11 Committee would remain intact and that the Trustee could utilize the services of SMG. SMG continued to provide services post-conversion and continued to bear responsibility for the course of the case.

There appears to be a split of authority over whether the Bankruptcy Court has the authority under § 105 of the Bankruptcy Code to compensate Creditors' Committee counsel for services performed in a Chapter 7 case. 11 U.S.C. § 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." In *In re Wonder Corp. of America*, 72 B.R. 580 (Bankr.D.Conn.1987), the court allowed fees under 11 U.S.C. § 330 to counsel for the creditors' committee which were incurred during the Chapter 7 portion of the case. The court authorized such employment in accordance with § 105(a):

> Although the Code does not specifically provide for the employment of counsel by a creditors' committee elected pursuant to Code § 705(a), on August 26, 1986, upon the application of the creditors' committee, this court authorized such employment in this case in accordance with Code § 105(a).

72 B.R. at 583 n. 3.

In *In re Willbet Enterprises, Inc.*, 43 B.R. 90 (Bankr.E.D.Pa.1984), the court concluded that it did not have authority under § 105 to allow compensation to the attorney representing a committee of creditors in a Chapter 7 case. The court went on to suggest that the Chapter 7 trustee who had a desire to confer with creditors' committee counsel

could seek the appointment of creditors' committee counsel as special counsel to the trustee. *Id.* In *In re Dominelli*, 788 F.2d 584 (9th Cir.1986), the bankruptcy court authorized the appointment of counsel to the Chapter 7 creditors' committee "with compensation to be at the expense of the estates." On appeal, the Circuit Court of Appeals held that there is no authority for the bankruptcy court "to encumber debtor estates in a Chapter 7 case with the expense of providing counsel to a creditors' committee". *Id.* at 586.

The facts of this case warrant the continuance of the Chapter 11 Committee and the retention of its counsel after conversion in order to assist the Trustee and to assist the Court in its considerations of the various sides of the complex issues involved in this case. In order to facilitate administration of the case, we believe it was appropriate to exercise our authority under § 105(a) to keep the Chapter 11 Committee intact and allow SMG to continue to provide services.

Further, our January 24, 1991 Order authorized the *Trustee* to utilize SMG's services. In effect, SMG served post-conversion as special counsel to the Trustee. The Trustee called upon SMG for their input and participation. The Trustee did not object to the Application.

We find that the input of SMG in this case was necessary and that the services provided by SMG were of a clear benefit to the Trustee and the estate. SMG is entitled to compensation from the bankruptcy estate.

### II. Timeliness of SWC Objections

■ On January 24, 1991, an Order was entered which authorized the Chapter 11 Committee to remain intact in the Chapter 7 case and authorized SMG to perform services in the Chapter 7 case. SWC voiced no objection prior to entry of the Order, filed no motion for reconsideration nor took an appeal from the Order.

On March 8, 1991, after conversion of the case to Chapter 7, an Order was entered authorizing SMG's engagement as counsel in this case. SWC voiced no objections prior to entry of the Order, filed no motion for recon-

sideration nor took an appeal from the Order.

On May 21, 1991, an Order was entered allowing SMG fees for services provided during the Chapter 11 portion of this case. The Order provided that the compensation was "interim," putting all parties on notice that it was expected that SMG would continue to provide services in the Chapter 7 case and file further application(s) for fees. SWC voiced no objection prior to entry of the Order, filed no motion for reconsideration nor took an appeal from the Order.

It was not until July, 1992 [2] that SWC first questioned SMG's role in this case when it filed a motion to terminate SMG's services. SWC sought to eliminate SMG after the Committee objected to a proposed settlement of major litigation in this case between SWC and the estate. At a hearing held on August 10, 1992, the Court refused SWC's motion as an attempt to expel the opposition. SWC filed no motion for reconsideration nor took an appeal from this Order.

The timing of SWC's objection to the Committee's role in this case, first raised when the Committee voiced objection to the proposed settlement between SWC and the Trustee, and the present objection to SMG's fees after standing by and allowing SMG to provide services in the Chapter 7 case to the Committee and the Trustee exhibits bad faith on the part of SWC. Had SWC timely voiced an objection to SMG's continued employment or timely filed a motion for reconsideration or an appeal from any of the Orders of this Court, SMG would not have continued to provide services in this case. Accordingly, SWC's own actions preclude it from seeking the disallowance of SMG's reasonable counsel fees for services rendered to the Committee and the Trustee in this case.

An appropriate Order allowing SMG further interim fees of $20,000 and reimbursement of expenses of $3,429.44 was issued on November 8, 1993.

---

**2.** The fee application presently before the Court covers the period through March 31, 1992. The motion by SWC to terminate SMG's role filed in July was subsequent to the time period covered by the present fee application.